**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

**UNITED STATES OF AMERICA**
        Plaintiff,

  v.                                         Case No. 06-CR-140

**MARK GARBO**
        **Defendant.**

## SENTENCING MEMORANDUM

Defendant Mark Garbo was a heroin addict who involved himself in a large-scale drug distribution conspiracy headed by Greg Jackson and supplied by Kazeem Afolabi, assisting the higher ups in the scheme in various ways in order to feed his own addiction. Defendant pleaded guilty to a single count of heroin distribution, contrary to 21 U.S.C. § 841(a)(1) & (b)(1)(C), which was based on his driving of another scheme participant, Artis Echols, to a controlled buy.

The probation office prepared a pre-sentence report ("PSR") in anticipation of sentencing. The PSR set defendant's offense level at 19 (base level 24, U.S.S.G. § 2D1.1(c)(8), minus 2 for mitigated role in the offense, § 3B1.2(b), and minus 3 for acceptance of responsibility, § 3E1.1) and his criminal history category at I, producing an imprisonment range of 30-37 months under the sentencing guidelines.

Defendant objected to the denial of a greater role reduction, as the parties jointly recommended in the plea agreement. Further, after completion of the PSR but prior to sentencing, defendant met with the government and provided information about the offense sufficient to qualify him for the safety valve reduction under U.S.S.G. § 2D1.1(b)(9).

See 18 U.S.C. § 3553(f); U.S.C. § 5C1.2. I accepted the parties' recommendation for a 3 level role reduction under § 3B1.2 and further reduced the offense level by 2 under § 2D1.1(b)(9), creating an imprisonment range of 21-27 months. Defendant requested a non-guideline sentence of probation, while the government advocated a term at the low end of the range. Upon consideration of the arguments of counsel and all of the factors set forth in 18 U.S.C. § 3553(a), I imposed a sentence of one year and one day in prison. This memorandum sets forth my reasons.

## I. SENTENCING PROCEDURE

I follow a three-step sentencing procedure in light of United States v. Booker, 543 U.S. 220 (2005). First, I determine the advisory guideline range, resolving any disputes necessary to that determination. Second, I decide whether to grant any departures pursuant to the Sentencing Commission's policy statements. Finally, I select a sentence that is sufficient but not greater than necessary given all of the factors set forth in 18 U.S.C. § 3553(a). E.g., United States v. Peralta-Espinoza, 413 F. Supp. 2d 972, 974 (E.D. Wis. 2006).

## II. DISCUSSION

**A.  Guideline Determinations**

   **1.  Safety Valve**

Under the safety valve provision, the defendant may be sentenced under the guidelines, notwithstanding any otherwise applicable statutory mandatory minimum, and receive a 2 level reduction under U.S.S.G. § 2D1.1(b)(9), if he satisfies five criteria. 18 U.S.C. § 3553(f); U.S.S.G. § 5C1.2(a):

> (1) the defendant does not have more than 1 criminal history point, as determined under the sentencing guidelines before application of subsection (b) of § 4A1.3 (Departures Based on Inadequacy of Criminal History Category);
>
> (2) the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;
>
> (3) the offense did not result in death or serious bodily injury to any person;
>
> (4) the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. § 848; and
>
> (5) not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

U.S.S.G. § 5C1.2(a).

It was undisputed that defendant satisfied the first four criteria. Prior to sentencing, he met with the government and provided sufficient information to satisfy the fifth. Therefore, I awarded a 2 level reduction under U.S.S.G. § 2B1.1(b)(9) ("If the defendant meets the criteria set forth in subdivisions (1)-(5) of subsection (a) of § 5C1.2 (Limitation on Applicability of Statutory Minimum Sentences in Certain Cases), decrease by 2 levels.").

**2.     Mitigated Role in the Offense**

Defendant objected to the PSR's 2 level reduction under U.S.S.G. § 3B1.2(b), rather than the 3 levels recommended in the plea agreement. Under § 3B1.2, the court can reduce the level by 4 if the defendant was a minimal participant, by 2 if he was a minor

3

participant, and by 3 in cases falling in between. The guideline thus provides a range of adjustments for a defendant who plays a part in committing the offense that makes him substantially less culpable than the average participant. U.S.S.G. § 3B1.2 cmt. n.3(A). The minimal participant adjustment applies to defendants who are plainly among the least culpable of those involved in the conduct of a group. Under this provision, the defendant's lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others is indicative of a role as minimal participant. U.S.S.G. § 3B1.2 cmt. n.4. The minor participant reduction applies to a defendant who is less culpable than most other participants, but whose role could not be described as minimal. U.S.S.G. § 3B1.2 cmt. n.5. The defendant bears the burden of showing entitlement to a reduction under § 3B1.2 by a preponderance of the evidence. United States v. Corral, 324 F.3d 866, 874 (7th Cir. 2003).

I agreed with the parties that a 3 level reduction was proper in this case. Defendant was substantially less culpable than other participants in this crime, including Jackson and Echols. Further, the evidence suggested that he did not have full knowledge or understanding of the scope of the conspiracy and its activities. Regarding the specific offense of conviction, he simply drove Echols to a deal. Regarding his involvement in the broader conspiracy, I found that defendant was properly characterized as an addict who hung around in order to meet his own drug needs. Finally, even though defendant was held responsible only for the drugs with which he was personally involved, application note 3(A) makes clear that "a defendant who is convicted of a drug trafficking offense, whose role in that offense was limited to transporting or storing drugs and who is accountable under § 1B1.3 only for the quantity of drugs the defendant personally transported or stored

4

is not precluded from consideration for an adjustment under this guideline." U.S.S.G. § 3B1.2 cmt. n.3(A). Therefore, I reduced the offense level by 3.

Following these two adjustments, defendant's range became 21-27 months. Neither side requested a departure, so I proceeded to the imposition of sentence under § 3553(a).

**B.      Section 3553(a)**

Section 3553(a) requires the court to consider seven factors in imposing sentence:

(1)     the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)     the need for the sentence imposed–

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3)     the kinds of sentences available;

(4)     the advisory guideline range;

(5)     any pertinent policy statements issued by the Sentencing Commission;

(6)     the need to avoid unwarranted sentence disparities; and

(7)     the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). The statute directs the court, after considering these factors, to impose a sentence that is sufficient but not greater than necessary to comply with the purposes of sentencing set forth in sub-section (a)(2).

5

### 1. Nature of Offense

As noted, defendant involved himself in a fairly large heroin distribution conspiracy headed by Greg Jackson and supplied by Kazeem Afolabi. However, his role in the conspiracy was mitigated. He bought heroin from Jackson, often for his own use, and brokered deals for Jackson. He also drove co-defendant Echols to a controlled buy. The parties estimated that his relevant conduct was 80-100 grams of heroin. There was no evidence of weapon possession or violence, or that defendant was a large-scale dealer himself. Rather, he was mainly a heroin user who assisted Jackson and Echols in various ways to meet his own needs.

### 2. Character of Defendant

Defendant was twenty-seven years old and had a minimal prior record, consisting of possession of drug paraphernalia and marijuana. Drug use seemed to be his biggest problem, and he reported use of marijuana, vicodin and heroin. Everyone agreed that his strong heroin addiction led to his involvement with this conspiracy. At sentencing, defendant thanked the government for arresting him, as he believed it may have saved his life.

There was cause for optimism in regards to defendant's drug use, as he completed in-patient treatment at Genesis as a condition of his bond in this case and produced negative drugs screens since his release about nine months prior to sentencing. He was also cooperative with the government and compliant with all other conditions of release.

Defendant had other positives in his background, as well. He graduated high school and had a decent employment record, at least when he was sober. He worked in

6

maintenance at Roma Lounge for the six months prior to sentencing, and his employer wrote a positive letter about him. He worked at Trent Tube from 2002 to 2005, before he was discharged for coming to work under the influence. Before that, he worked construction for nearly two years and as a groundskeeper at a hotel for nearly three years before that. This record demonstrated that defendant could be a productive member of society when his drug use was under control.

Defendant also had strong family and community support, as reflected in the many letters I received and the numerous family members who appeared in support at his sentencing. Defendant's mother, with whom he had lived most of his life, wrote that he was loving and considerate. She further wrote that she had seen a great change in him recently, since he had been off drugs, an observation repeated by his brother at the sentencing hearing. A family friend wrote that defendant was helpful and handy, and seemed to have gotten himself back on the right track. His grandfather wrote that he helped defendant get a job, and that defendant had not let him down with his performance. I also received a positive letter from defendant's father.

### 3. Purposes of Sentencing

I saw no evidence that defendant was dangerous or, so long as he stayed sober, a risk of recidivism. There was a need for some period of confinement, however, to promote respect for the law and deter others, given the harmful effects of drugs on the community. As the AUSA noted at sentencing, heroin in particular poses a great danger to society. Defendant clearly had substance abuse treatment needs, which could be addressed (and which he was, in fact, addressing) in the community. However, given the seriousness of the crime, a prison term had to come first.

### 4. Guidelines

The guidelines recommended a term of 21-27 months. Under all of the circumstances, I found that range somewhat greater than necessary to satisfy the purposes of sentencing. First, defendant's involvement in this conspiracy stemmed from his own need to obtain heroin; he was not a substantial dealer in his own right. He assisted others in relatively minor ways. Thus, a prison term approaching two years was not necessary to provide just punishment.

Second, defendant deserved credit for the steps he had taken to deal with his addiction. He did well in the sixty-day Genesis in-patient program and maintained sobriety for about nine months. He also maintained a steady job for about five months, and his employer thought highly of him. His history of holding jobs for significant periods of time demonstrated that he could behave in a pro-social manner when sober. I required that he continue treatment as part of a supervised release term in the community. Thus, the guideline prison term was not necessary to protect the public from further crimes defendant might commit.

Third, defendant had never been to jail before. He was not someone who had experienced incarceration yet continued to offend. Therefore, a prison term below the range was sufficient to impress upon him the seriousness of the offense and deter him from re-offending. Finally, defendant had strong family support, which would assist in his re-integration into the community, further assuring that he would not re-offend.

These factors supported a sentence below the range. However, I could not conclude that defendant's request for probation was appropriate. Given the seriousness

8

of the crime, some period of imprisonment was required.[1] Under all of the circumstances, I found a sentence of 12 months and 1 day sufficient but not greater than necessary. This sentence provided just punishment and deterred defendant from re-offending, while recognizing the mitigating factors mentioned above. Because the sentence was based on the particular facts of the case and varied only modestly from the guideline range, it did not create unwarranted disparity.

### III. CONCLUSION

Therefore, I committed defendant to the custody of the Bureau of Prisons for 12 months and 1 day. Upon completion of his prison term, I ordered defendant to serve three years of supervised release, with conditions including, <u>inter alia</u>, drug testing and treatment.

Dated at Milwaukee, Wisconsin, this 7th day of March, 2007.

/s Lynn Adelman

_____
LYNN ADELMAN
District Judge

---

[1] At sentencing, I expressed doubt that I was permitted to place defendant on probation under the statute of conviction. However, upon closer inspection, 21 U.S.C. § 841(b)(1)(C) appears to forbid probation only if death or serious bodily injury results, as opposed to sub-sections (b)(1)(A) & (B) of § 841, which forbid probation in all cases. In any event, as I also stated at sentencing, I would not have placed defendant on probation in this case even if empowered to do so.

9